FRANK HOWARD et al., Respondents, v. THE SCARRITT ESTATE COMPANY, Appellant.

Kansas City Court of Appeals, February 19, 1912.

1. NEGLIGENCE: Elevators: Wrongful Death. Plaintiffs sued for damages for the death of their son four years old, who with his parents got on a passenger elevator, in an office building, to go to the fifth floor, to the toilet room. When the elevator reached the second floor, it stopped and a passenger got off and before the doors were closed the elevator started up and the boy fell out, or started to get off, and fell down the elevator shaft, a distance of about forty feet, and was killed. *Held*, that the movement of the boy in falling, or going out of the elevator, was so sudden and unexpected that plaintiffs could not be held to be guilty of contributory negligence as a matter of law, and the boy was not chargeable with negligence on account of his age.

2. ———: ———: Pleading and Proof. There is no variance between the pleading and proof where the petition alleges that the boy "fell out of said car" and the evidence shows that he voluntarily left it, the gravamen of the charge being negligence of the elevator operator in leaving the door open, the age of the boy precluding him of negligence.

3. ———: ———: Degree of Care. Carriers of passengers by elevator are required to exercise the highest degree of care and skill for the personal safety of its passengers.

4. ———: ———: Instructions: Damages. An instruction on the measure of damages, in an action by parents for the death of an infant son, which authorized the jury to give damages by way of solatium for the loss of the comfort, society and love of the child, is erroneous.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

REVERSED AND REMANDED.

*Boyle & Howell* and *Joseph S. Brooks* for appellant.

(1) The court erred in refusing to give defendant's peremptory instruction in the nature of a demurrer to the evidence at the close of plaintiff's evidence and at the close of the whole case. If there is no evidence tending to establish the cause of action alleged in the petition, the court has but one duty to perform—and to so declare by instruction. Davis v. Thompson, 209 Mo. 192; Sissel v. Railway, 214 Mo. 515; Byerly v. Light Co., 130 App. 593. (2) There is a variance between the petition and the case proved. The case alleged in the petition is to the effect that plaintiffs' son "fell out of said car," whereas the evidence tended to show and did show that plaintiffs' son voluntarily left the elevator. Peterson v. Railway, 211 Mo. 498; Jones v. Cooperage Co., 134 Mo. App. 324; Giato v. Railroad, 132 Mo. App. 363; Feed Co. v. Railroad, 129 Mo. App. 498. (3) Instruction number one given for plaintiff is erroneous in this that the issue submitted to the jury is broader than the issue declared on in the petition. In the petition it is alleged that plaintiffs' son "fell out of said elevator car," whereas the issue made by the instruction is: that the said son, "either tried to get out of, or, losing his balance, fell from the said elevator car." Grojean v. Darby, 135 Mo. App. 586; Davidson v. Transit Co., 211 Mo. 320; Crow v. Railroad, 212 Mo. 589; Kellogg v. Kirksville, 132 Mo. App. 519; Flahetry v. Transit Co., 207 Mo. 318; Smith v. Railway, 126 Mo. App. 120; Percell v. Railway, 126 Mo. App. 43; Huss v. Bakery Co., 210 Mo. 44. (4) Defendant's refused instruction number 6 declared the law cor-

rectly, and the court erred in refusing it. The court instructed the jury that plaintiff could recover if their son "tried to get out of" said elevator car. Cornovski v. Transit Co., 207 Mo. 263; Miller v. Railway, 134 S. W. 1045. (5) The court erred in refusing to grant appellant a new trial on the ground that it was shown in the evidence that witness Ed. Rice who testified as an expert in plaintiff's behalf, was shown on the hearing of the motion for a new trial to have deliberately falsified about a material matter in the case. (6) Instruction numbered four given for the plaintiffs was erroneous in this that it wrongly declared the measure of damages—It does not limit plaintiff's recovery to the minority of the son. Calcatarra v. Iovaldi, 123 Mo. App. 354; Parsons v. Railroad, 94 Mo. 286; McGown v. Steel Co., 109 Mo. 518; Leahy v. Davis, 121 Mo. 227; Hickman v. Railroad, 22 Mo. App. 344; Frank v. St. Louis, 110 Mo. 516; Hennessy v. Brewing Co., 145 Mo. 104. (7) There was no evidence in the case showing the measure of the damage sustained —nothing upon which the jury could base the amount of the verdict. Dunn v. Railroad, 21 Mo. App. 204. (8) The damages are excessive.

*Ellis, Cook & Barnett* for respondents.

Carriers of people by elevators in buildings are common carriers of passengers and bound by the same rules of law as to care and otherwise as are railroads or street railways or other carriers. Lee v. Knapp, 155 Mo. 610; Becker v. Building Co., 174 Mo. 246; Goldsmith v. Building Co., 182 Mo. 597; Luckel v. Bldg. Co., 177 Mo. 608; Orcutt v. Bldg. Co., 201 Mo. 424. One who takes passage with a carrier with the latter's consent is a passenger even though no compensation is to be paid and the service is gratuitous. Lemon v. Chanslor, 68 Mo. 340; Orcutt v. Bldg. Co., 201 Mo. 424; Shearman & R. on Neg. (3 Ed.), sec. 262; 5 Am. & Eng. Ency. (2 Ed.), p. 507.

BROADDUS, P. J.—Negligence. The plaintiffs are husband and wife and are prosecuting this action for damages for the death of their infant son, William Clarance Howard. The defendant corporation is the owner of a large office building in Kansas City, Missouri, known as the Scarritt Building. It was shown that on the 10th day of January, 1910, the defendant maintained a series of elevators for the purpose of carrying persons up and down from the many stories of said building. On the day named, the plaintiffs, with their minor son, not quite four years of age, entered one of said elevators to be carried to the fifth floor or story of said building for the purpose of having the boy use the toilet room on that floor. At the same time another passenger, a Mr. Shurtz, entered the elevator to go to the second floor. When the elevator arrived at the second floor it stopped and the gate was opened for him to get out. He proceeded to do so, after which the elevator started up and before the door was sufficiently closed, the little boy either fell out or stepped out of the elevator and fell to the bottom of the shaft and was killed.

The elevator doors are not attached to the elevator itself but to the shaft, and there is a separate door for entrance to and exit from the elevator on each floor of the building. These doors are composed of two parts. When the elevator stops the doors open full. To close them the operator of the elevator puts his hand on the edge of one of these parts to shove the two together. In the movement of one the other part automatically moves also, and by this means the two parts meet and the door is closed.

The plaintiffs' evidence is to the effect that when the elevator reached the second floor and the door was opened and Mr. Shurtz, the passenger, had gotten out, the elevator made a sudden jerk and started, and almost instantly the little boy was seen at the entrance of the elevator in the act of falling. The father of

the boy testified that when he got into the elevator he had hold of the boy, but when he started to fall out perhaps he merely had his hand on his shoulder; that the mother and boy were in front of him and fully in his view, and that he made an effort to catch the boy before he fell, but failed.    The testimony of Mr. Shurtz was to the effect that he had gotten out and was some ten or fifteen feet away when he heard a scream which attracted his attention to the elevator where he perceived the boy hanging out, and that he made a rush to grab him but he slipped and fell, and the boy fell out and down the shaft.

L. W. Spaulding, who was the operator at the time, testified: That the car of the elevator is operated by electricity.    He described the manner in which the elevator was operated from which we quote the following:    "When I got to the second floor I opened the gate and let Mr. Shurtz out.    In closing the gate I had hold of it with my hand and I gave it a shove. The doors are double doors with a latch in the middle.    You push one door and that automatically pulls the other one too.    They work easy; work up and down. They run on rollers up at the top.    It doesn't require much force to push them.    In closing them you hold the edge of the door and shove, and there is a sort of an outside jamb, pull it like that.    When you open the doors to let a person out or to permit a person in, the doors come all the way open.    When you take hold of the edge of the door you then give it a shove and the other door starts to meet it.    They were about that far apart when I threw my lever over.    I could not start the car without throwing my lever over.    These doors were about two feet apart when I threw my lever over.    And when I threw my lever open the doors were in that position and were in the act of approaching each other.    The car does not start the instant the lever drops down, but takes them about— well—it is hard to get the time of it.    Can't give the

time on it; it waits just an instant and then starts up.
At the time the car started up and got in motion the
doors were not more than twelve or thirteen inches
apart. . . . I had been working in the Scarritt
Building about three years. Had been operating these
elevators about that long. In operating the elevators
when you see everybody is off, or on, you start your
gates closed, and then throw your lever over. That
is the way I did it on this occasion. That is the usual
and customary way of doing it. When the elevator
started something attracted my attention. I think Mr.
Howard screamed. I looked around, the little boy just
had his hands in there, had them in there and gave the
gates a shove like that, and they flew open again. I
reversed my lever. . . . The car stopped.''

The plaintiff introduced Ed. Rice as an expert.
He testified that he was night watchman and elevator
operator employed at the New York Life Building in
Kansas City; that he had had experience in operating
elevators in Kansas City for about ten years; that it
was customary in Kansas City not to move the car
until the gates were closed; that the car should never
move until the door is shut. After the trial and verdict
defendant produced the affidavit of Henry A. Kelley to
the effect that Rice was not in the employ of the New
York Life Building and never had been.

The gravamen of the charge in the petition on
which the cause was tried after preliminary allegations
leading up to it, is as follows: ''That thereafter,
said operator, being then in charge and control of said
elevator car, negligently turned on or applied the
power moving the same, and caused said elevator car
to suddenly ascend before he, the said operator, had
closed the said sliding doors opening therefrom to
said second floor, and while said doors were still
widely apart; that because thereof, the said William
C. Howard, being so young as not to understand his
peril, and because of said negligent act of the defend-

ant and its said operator in leaving said sliding doors wide open, and in so as aforesaid starting said car upward with the doors so opened, fell out of said elevator car and through the opening of said sliding doors, and thence down the elevator shaft to the bottom thereof, a distance of about forty feet, thereby receiving injuries from which he died on the following day.''

The defendant's answer admits that it is a corporation and owns the Scarritt Building; and that it has in said building elevators for the accommodation of people desiring to go from one floor to another in said building, and for a further defense denies all the other allegations in the petition; and further says if the son of plaintiffs was injured as set forth in plaintiffs' petition, that said injuries were due to the carelessness and negligence of the plaintiffs herein and their said son.

Among other instructions asked by the plaintiff, the court instructed the jury in substance that if they found that defendant was guilty of negligence as charged, they would find for plaintiff if the boy either fell out or tried to get out of the elevator and thereby fell and was killed. The defendant asked the court to instruct ''the jury that under the pleadings and all the evidence your verdict must be for defendant.'' The court refused to so instruct. The court also refused defendant's instructions H and 6 which read as follows: ''The court instructs the jury that if you find from the evidence plaintiffs, Mr. and Mrs. Howard, and their son, did not go into the Scarritt Building on any business with the company, or with any of the tenants therein, but went into the building at the time in question to go to a toilet room on the fifth floor without any invitation or consent from defendant, and that such toilet room was private for the use of tenants of the building only, then defendant owed plaintiffs no other duty while in the build-

ing except not to willfully or intentionally injure them; and your verdict must be for defendant, there being no evidence in this case that defendant, or its employees, did willfully or intentionally injure plaintiffs' son." "If the jury believe from the evidence that the plaintiffs did not have their little child under their control and were not watching its conduct while riding in the elevator as detailed in the testimony in this case, then they were guilty of contributory negligence and cannot recover anything in this case." The jury returned a verdict for the plaintiffs for $5000. Defendant appeals from the judgment.

The appellant contends that the court should have sustained its demurrer to plaintiffs' case on the ground that the plaintiffs, the mother and father, entering with their infant son an elevator of a large office building in a city, the child too young to know how to take care of itself, it was their duty to see that the child did not get out when the car stopped and the gates were opened. There can be no question but what it was the duty of plaintiffs, considering such circumstances as the age of the child and the mental confusion under which a child of his age would labor while being carried in a rapid elevator in a large office building, to keep a close lookout for his safety; and that it was their duty, if they saw that the door of the elevator was open, to have prevented him from falling or going out if they could have done so by the exercise of proper efforts. And had the facts shown that the father or mother by the most prompt action on the part of either could have prevented him from getting out of the elevator their right to recover should be denied. But the evidence shows that the movement of the boy in falling or going out of the elevator was so sudden and unexpected that we do not feel that we would feel justified in holding, as a matter of law, that the plaintiffs were guilty of such contributory negligence as would

bar their right to recover. It was a question for the
jury. As a matter of course, contributory negligence
was not chargeable to the boy considering his age.
The case depends mostly upon the alleged negligence
of the operator of the elevator in leaving its doors
open at the time.

The appellant seems to think that there was a
variance between the *allegata* and the *probata,* i. e.,
the petition alleges that plaintiffs'. son "fell out of
said car," whereas, the evidence tended to show that
plaintiffs' son voluntarily left it. We are of the opin-
ion that the evidence tends to show that when Mr.
Shurtz got out of the elevator on the second floor the
boy attempted to follow him, acting on the supposi-
tion that he was following his father. The evidence
that he fell out is so slight that it has little or no
probative force. We will assume, therefore, that the
boy's act was voluntary, and yet, we do not think
there was a variance between the allegations of the
petition and the proof. The gravamen of the charge
is the negligence of the operator in leaving the doors
open, and it was of no consequence whether the boy
fell out or voluntary attempted to get out of the ele-
vator, as he is not to be charged with negligence.
So far as the boy was concerned, considering his in-
fancy, the act, if he did attempt to walk out, may be
treated as involuntary. The rule would be different
in the case of an adult person. And for the same
reason we do not think the court committed error
in giving plaintiffs' instruction authorizing a recov-
ery upon the ground that the boy either fell out or at-
tempted to walk out of the elevator while the door was
left open by the operator. And also for the same reason
the court was justified in refusing defendant's instruc-
tion that plaintiffs were not entitled to recover if the
act of the boy was voluntary.

Although the defendant asked an instruction to
the effect that if plaintiffs did not go into the build-

ing on any business with defendant or any of the tenants therein, but went into the building to go to a toilet room on the fifth floor, then defendant owed them no duty except not to willfully or intentionally injure them, then the verdict would be for defendant, which was refused; and the motion for a new trial assigned the action of the court in that respect as error. It is not relied on in this court and, therefore, is abandoned. Thus tacitly the appellant admits that plaintiffs were *bona fide* passengers, and, as such, it was the duty of its operator to exercise the highest degree of care which a person of ordinary prudence would have exercised in a similar situation. "Carriers of passengers by elevator are required to exercise the highest degree of care and skill for the personal safety of its passengers." [Lee v. Knapp & Co., 155 Mo. 610.] It is said there is no distinction in law between the duties and liabilities of a carrier of passengers by an elevator and one by a railroad. [Becker v. Lincoln Real Est. & Bldg. Co., 174 Mo. 246; Orcutt v. Century Bldg. Co., 210 Mo. 424.] And the question of compensation to the carrier is of no moment. [Orcutt v. Bldg. Co., supra; Lemon v. Chanslor, 68 Mo. 340.]

The evidence tends to show that it was the duty of the operator to close the doors of the elevator before he started his car. The operator's evidence tends to show that such was his duty, although he attempts to justify his conduct upon the prevailing custom in such cases to close it fully only immediately after starting the car. And it seems to us that as he was at his post at the door, and as he said, he saw the boy thrust his hand in between the two parts of the door to shove it apart, he knew of the danger and should have acted with the utmost despatch. But in view of the fact that the boy's conduct was so sudden and surprising that even the father was not able to interfere suc-

cessfully to prevent him getting out, it is very natural to conclude that he too was taken by surprise which prevented him from acting as promptly and energetically as he should have under other circumstances. But the case must depend upon the negligence charged, and as we think there was sufficient evidence to sustain the charge,· the verdict should stand so far as that matter is concerned.

Instruction four given for plaintiffs on the measure of damages is criticised as being erroneous for the reason that it did not limit plaintiffs' recovery to the minority of the son. And the further objection is, that it gave to the jury authority to allow plaintiffs by way of solatium for the loss of the comfort, society and love of the child. It is said: "the loss of the comfort and society of the child to the parents is not to be estimated as damages." [Parsons v. Mo. Pac. Ry. Co., 94 Mo. 286.] There are many decisions in this state to the effect that: "No damages can be allowed by way of solatium for mental anguish or distress for the death or loss of society of the child." [Leahy v. Davis, 121 Mo. 227; Franke v. City of St. Louis, 110 Mo. 516.] It is unnecessary to enumerate all of them. But there is a decision of later date to the effect that the measure of damages in such cases includes that for the loss of the comfort, society and love of the child. [Sharp v. National Biscuit Co., 179 Mo. 553.] We quote from the language of the decision as follows: "The necessary injury referred to in the statute may or may not include the net loss of services, but it also covers other injuries besides loss of services. It includes loss of the comfort, society and love of the child. . . . The instruction limited their recovery to the first. It, therefore, favored the defendant to that extent, and hence the defendant cannot complain." The decision and its effect has been discussed by the St. Louis Court of Appeals in Calcaterra v. Iovaldi, 123 Mo.

App. 197, and by this court in Marshall v. Mines Co., 119 Mo. App. 270, in both of which it is held that the expression we have quoted in the 179th Mo. was *obiter dictum*, and was not to be taken as authority for over-ruling the many prior decisions holding that the term "necessary injury" meant "pecuniary loss."

Whether the opinion was *obiter dictum* or not, the Supreme Court in a more recent opinion wherein it is held, as in the former cases, the measure of damages given by the statute is the pecuniary loss of the plaintiff in the death of the person killed. [Behen v. Transit Co., 186 Mo. 430.] No reference whatever is made to the opinion in Sharp v. National Biscuit Co., supra. But as it is the latest expression of the Supreme Court on the question it is binding on us under the Constitution. It, therefore, follows that said instruction four should not have been given, and as it was a material error the cause is reversed and remanded. All concur.