.GEORGE H. WILLIAMS and HATTIE WILLIAMS, Respondents, v. U. F. SHORT and LEE GARRITY, Appellants.*

Kansas City Court of Appeals. January 19, 1925.

1. **PROCESS: Attachment: Service of Summons Issuing Out of County Where Nonresident's Realty was Attached Against Resident Co-defendant Held Good and Resident Defendant Properly in Court.** In an action under section 4217, Revised Statutes 1919, to recover damages for death instituted by attachment under sections 1178

and 1745, Revised Statutes 1919, against two defendants, one a nonresident owning real estate which was attached in county where action accrued and the other residing in another county, where he was served with summons *held* suit having been brought by attachment proceedings in county where nonresident defendant's realty was situated, summons was properly issued out of said county against resident defendant and he was properly in court.

2. **REMOVAL OF CAUSES**: Where Defendants Were Properly in Court, Refusal to Transfer Cause to Federal Court Held Proper. Where resident and nonresident defendants were properly in court, refusal to transfer cause to federal court held proper.

3. **TRIAL PRACTICE**: Question of Good Faith in Joining Parties Defendant Held for Jury. The question of good faith in joining parties defendant is one for the jury.

4. ———: Fraudulent Joinder: Joinder of Defendants to Prevent Removal, in Action Brought in Good Faith, Does Not Render Joinder Fraudulent. If action is brought in good faith joinder of resident with nonresident defendant is not rendered fraudulent by the fact that the motive was to prevent removal of cause to Federal court.

5. **NEGLIGENCE**: Carriers: In Action for Death Evidence Held Question for Jury as to Whether Facts Constituted Aggravating Circumstances. In action to recover damages for death of plaintiff's minor son while a passenger in elevator, evidence that doors of elevator were in such condition that they would not latch, which was known to operator of elevator and manager of building, and that operator attempted to run elevator from basement, though he knew condition of doors, *held* question for jury as to whether facts constituted "aggravating circumstances" as charged in petition.

6. **CARRIERS**: Degree of Care: One Riding in Elevator of Public Building is a Passenger for Hire and Operator Must Exercise Highest Degree of Care for His Safety. One who rides in an elevator in a store, hotel or public office building is not a mere licensee or trespasser, but is a passenger for hire and it was duty of operator to exercise the highest degree of care for his personal safety.

7. ———: Negligence: Where There was an Implied Obligation to Take Elevator Passenger from Upper to Lower Floor of Public Building, Defendants were Not Relieved from Liability for Death Because an Alleged Trespasser Was Operating Elevator. Where evidence showed deceased offered himself as an elevator passenger at first floor of public building and was carried by regular operator to fourth floor, there was an implied obligation to take him down, and there was no merit in contention that defendants were not liable because

an alleged trespasser was operating elevator at time of death of deceased, since the cause of action was bottomed upon the negligent condition of elevator and negligence of operator in operation thereof.

*Corpus Juris-Cyc. References; Attachment, 1 C. J., p. 1158, n. 93. Carriers, 10 C. J., p. 610, n. 4; p. 870, n. 60; p. 906, n. 75; p. 1081, n. 60. Process, 32 Cyc., p. 427, n. 48. Removal of Causes, 34 Cyc., p. 1258, n. 8, 15 New. Trial, 38 Cyc., p. 1525, n. 21 New.

Appeal from the Circuit Court of Pettis County.—*Hon. Charles E. Yeater*, Special Judge.

AFFIRMED.

*C. M. Williams, Paul Barnett*, and *Claude Wilkerson* for respondent.

*Bohling & Bohling* and *Lamm & Lamm* for appellants.

ARNOLD, J.—This suit was instituted under the provisions of section 4217, Revised Statutes 1919 (Amended Laws of 1911, p. 203, section 5425, Revised Statutes 1909), to recover damages for the death of plaintiffs' minor son, Martin Williams.

The record shows that defendant U. F. Short, a resident of the State of Texas, was the owner of a five-story building in the city of Sedalia, Mo., and defendant Garrity, a boy seventeen years of age at the time of the accident, was employed by Short as operator of a passenger elevator in said building. On the day Martin Williams was killed, June 3, 1921, he had gone to the home of Merrill Michaelis, a boy fourteen years old, and the two were playing ball when the mother of Merrill called to her son and told him to go to the studio of his music teacher, Professor Hert, in the Short building, and buy some violin strings. Merrill did not want to go, but his mother insisted and Martin said he would go along. The two boys then went to said building, entered

the elevator, and were taken by Garrity to the fourth floor where Professor Hert's studio was located, and Merrill purchased the strings. The boys then went to the fifth floor, by way of the stairs, then to the toilet room and from there to the elevator shaft on that floor, for the purpose of being taken to the first floor. The elevator was stopped at the fifth floor, the door was open and a boy named Gray was inside. After the two boys entered, the elevator began suddenly to descend, without any act on the part of the persons in it. This sudden movement frightened the boys and when they reached the fourth floor and found the door open, all three attempted to effect their escape while the elevator was in motion. Gray and Michaelis succeeded, but Williams was caught by the descending car, his neck was broken, his head crushed and death resulted immediately.

The sudden downward movement of the elevator is explained by defendants' testimony as follows: After Garrity, the regular operator, had transported the boys to the fourth floor, as above detailed, he brought the elevator to the first floor and there engaged in conversation with two other boys, by name William Gray and Oscar Thomas. They talked about running elevators and Gray got into the car and started it. The testimony is not clear as to whether he did this with permission of Garrity or without it. Garrity testified that boys sometimes would go into the cage for the purpose of using the mirror therein, and that he did not give these boys permission to run the elevator. Gray started the elevator which ascended to a point above the first floor, and there stuck. Garrity then told him to stay where he was and Garrity went to the basement in order to operate the motor which ran the elevator from that point. He had seen workmen do this and thought he could do it. By mistake, he ran the elevator up, instead of down and thus it went to the fifth floor where it was standing at the time Williams and Michaelis entered it. Garrity, seeing that he had run the elevator up instead of down as he had intended, then started operations from the

basement to bring it down. The elevator was operated within a shaft that extended from the first floor to the fifth and the doors were in the shaft. There was some evidence that none of the doors except the one on the first floor would stay closed, that this condition had existed for some time, and was known to Garrity.

There is some difference in the testimony as to whether or not Gray told the two boys not to enter the elevator at the fifth floor. Michaelis testified Gray did not warn them to stay out, while Gray, as defendants' witness, stated that he told them he was not the operator of the elevator and that the operator was Garrity; that he gave them no advice about anything; that he wouldn't push them out, and that he did not say anything more than that he was not the operator of the car and that they ought to wait until Garrity came; that he did not ask them to wait because they had no more than jumped in when the elevator started down and he didn't have time; that "they hadn't no more (than) stuck their feet in until it started."

The section of the statute (4217, R. S. 1919) under which this action was brought provides for a penalty "when any passenger shall die from any injury resulting from or occasioned by any defect or insufficiency in any railroad, . . . locomotive, car, street car, electric car or terminal car, . . . or in any stage coach, automobile, motor car or other public conveyance," or when the injury is occasioned by the unskillful, negligent or criminal intent of any master, pilot, engineer, agent, employee, or driver of any such other public conveyance while in charge of same as driver. And at the end of this statute it is provided: "Every person who shall have cause of action for any death through the negligence, unskillfulness, or criminal intent of any servant, under the provisions of this section, may at his option, bring suit thereon jointly against the master and servant, or severally, against either master or servant."

Prior to the institution of the present suit, and while defendant Garrity was still a resident of Pettis County,

Mo., plaintiffs brought a suit by attachment for the death of their minor son, against defendant Short who lived in Texas, naming him as sole defendant. Short filed application and bond for removal to the Federal District Court for the Western District of Missouri, on the grounds of diversified citizenship, and said application was granted. While that suit was pending in the Federal court the present suit was filed on January 5, 1922, by the same plaintiffs, in the circuit court of Pettis county, against U. F. Short and Leo Garrity was added as a new party defendant. A writ of attachment was sued out of the circuit court of Pettis county against Short and real estate in that county of which he was the owner was attached thereunder. Summons for defendant Garrity was issued directed to the sheriff of Greene county where Garrity then resided and he was there served with summons. Throughout the trial Garrity insisted the court acquired no jurisdiction of his person by said service, and this is one of the issues presented in this appeal. After the instant suit was filed and after answer by defendants, plaintiffs dismissed the action then pending in the Federal court. A timely application for removal to the Federal court was filed by defendant Short but was denied by the court. No exceptions were saved to this ruling and no appeal therefrom was taken, but defendants insist that the trial court was without jurisdiction and this position was insisted upon throughout the trial.

The petition was in two counts and after answer by both defendants the second count was dismissed. The first count charges plaintiffs were the father and mother, respectively, of Martin Williams, a male child eleven years of age; that U. F. Short was the owner of the building in question; that he was a non-resident of the State of Missouri, and that the ordinary process of law could not be served upon him; that in said building the defendant Short owned and operated a passenger elevator by an electric motor, for the purpose of carrying passengers to and from the various floors of said build-

ing; that he permitted said elevator to become impaired so that the doors attached to the shaft, and particularly the doors on the third, fourth and fifth floors would not latch properly and were so maintained that the doors could be opened from outside the elevator shaft; that the doors frequently would stand open while the elevator was being run by defendant Garrity, an employee of defendant Short, and that in operating said elevator from the basement, said Garrity knew that the doors to the shaft would not close and should have known that passengers might be in said elevator and that they would not know the cause of the descent thereof, and that said passengers would become alarmed and might attempt to escape while the elevator was moving and thereby be injured; that the boys in the elevator at said time did become alarmed and that the Williams boy, acting in the emergency, attempted to jump and was killed. The petition further alleges gross and aggravating negligence of defendant which directly resulted in such injury and death in that the doors of the elevator shaft and the elevator shaft itself had been in a defective condition for a great length of time, and that defendant knew of this defective condition; that the death of plaintiffs' son was caused by the negligence of defendant Short in permitting the defects and insufficiencies in said public conveyance, and to the negligent manner in which defendant Garrity operated the same. Damages were sought in the sum of $10,000.

The separate answer of defendant Short states that a prior suit was instituted against him; that the same was transferred to the Federal court, as above stated, and later was dismissed; that plaintiffs planned and connived with each other to defeat the jurisdiction of the Federal court and to that end conceived the idea of making defendant Leo Garrity a co-defendant with Short, and filed the petition in the instant case making him a party; that the petition fails to state facts sufficient to constitute a cause of action against defendant Garrity and states no facts showing any liability on his

part. The answer then avers that defendant took proper steps to remove the instant case to the Federal court, that Garrity was improperly joined as a co-defendant; that all necessary papers for such removal were filed but that the circuit court inadvertently and erroneously overruled said application for removal; and that the circuit court had no jurisdiction of the defendant.

The answer admits the ownership of the building and the elevator therein, and that the elevator was at all times operated for the purpose of carrying persons who had business with defendant's tenants of said building; that the deceased Martin Williams, at the time and place in question was guilty of contributory negligence; that while said elevator was temporarily in need of adjustment and was being properly adjusted by defendant Garrity, said Martin Williams, without the procurement of defendant or of said operator, negligently got into the car without any right to use or occupy the same, and continuing his said negligent conduct, undertook to escape from said elevator and received injuries from which he died.

The amended separate answer of defendant Garrity by his guardian *ad litem* admits that he was the operator of the elevator under contract of employment with Short; that he is a minor seventeen years of age, and pleads such infancy as a defense; admits that plaintiffs are the father and mother, respectively, of Martin Williams who lost his life on the date alleged in the petition, and charges that he lost his life in a negligent attempt to jump from the elevator mentioned in the petition while the same was in motion. The answer alleges that neither he nor his co-defendant Short was a resident of Pettis County, Mo., and that service was insufficient. The replies to both answers were general denials.

The cause was tried to a jury resulting in verdict and judgment for plaintiffs in the sum of $5,000, and an appeal was taken to the Supreme Court upon the theory that a constitutional question was involved. That court, upon due consideration, decided there was no constitu-

tional question involved and sent the case here by mandate for our consideration upon its merits.

Appellants' first assignment of error is that the trial court was without jurisdiction over the defendant Garrity; that there is no law authorizing the issuance of a summons by the circuit court of Pettis county when neither of the defendants resides or is found in said county; that there is no statutory authority for service from the circuit court of Pettis county upon Garrity a resident of Greene county, and that the court erred, therefore, in overruling Garrity's demurrer to the evidence; that defendant Short being a non-resident of the State and having filed application and bond for removal, the court erred in overruling his demurrer to the evidence of plaintiffs. The question of jurisdiction thus becomes of prime importance in the consideration of this appeal and for answer we must look to the statutes and construction thereof as applied to the facts herein found.

It is well to bear in mind that the present suit was instituted by attachment. Section 1178, Revised Statutes 1919, which is relied upon by both parties in support of the contradictory claims of each is, insofar as it applies herein, as follows: "Suits commenced by attachment against the property of a person or claim and delivery of personal property, where the specific property is sought to be recovered, shall be brought in the county in which such property may be found," etc. And section 1745 provides: "When there are several defendants, who reside or have property in different counties, and when a single defendant in any such action has property or effects in different counties, separate writs may issue to every such county." On this point plaintiffs rely chiefly upon the ruling in the case of Carter v. Arbuthnot, 62 Mo. 582. In that case suit was brought by attachment in Chariton county where Beemer, one of the defendants resided. Arbuthnot, the other defendant, was alleged to be a non-resident of the State. A writ issued to the sheriff of Chariton county and was returned duly

served upon Beemer, and a separate writ was issued to Linn county where land owned by Arbuthnot was seized. Publication was regularly made as to Arbuthnot, and at the return term he appeared and filed his plea in abatement. The issues went against him and he appealed upon the ground that the court acquired no jurisdiction over his lands in Linn county. In the determination of this question on appeal, the court said:

"Wherever a defendant resides or has property, the suit may be instituted. Either the one or the other gives the jurisdiction. Jurisdiction being thus obtained, a separate writ may then issue to any co-defendant who either resides in, or has property in, another county. As Beemer resides in Chariton county, the suit was properly brought there, and the writ was then rightfully issued against Arbuthnot's property in Linn county."

It is urged by defendants that the above quotation from the opinion is *obiter dictum.* We cannot accept this view as tenable. It is true that in that case personal service was had on Beemer in the county where the suit was brought, and the attachment writ thereafter issued to Linn county where Arbuthnot's property was. In the case at bar the suit was instituted by attachment against the property of Short, and thereafter a writ of summons issued out of the circuit court of Pettis county directed to the sheriff of Greene county where it was served on defendant Garrity. The rule is statutory that suits may be begun in this State by attachment as was done in this case and when properly brought, under the provisions of section 1745, writs may issue against co-defendants who reside or have property in such other county. In the Carter v. Arbuthnot case, the quotation above was directed to a point at issue in that case. It follows that in the instant case the suit having been brought by attachment proceedings, summons properly was issued against Garrity and he was properly in court.

This ruling is supported by Bank v. Rudert et al., 153 Mo. App. 450, in a very able opinion by ELLISON, J., of this court. It was held that the statute (section 1752,

Revised Statutes 1909) requiring a suit by attachment to be brought in the county where the property attached is located is a part of the practice act applicable to a suit when the property alone is proceeded against, or when there are other defendants in the same county. The court cites with approval the ruling in the case of Carter v. Arbuthnot, supra. We therefore hold that the service on defendant Garrity was good and that he is properly in court. Having ruled that the parties were properly in court, we find the contention of defendants that the court erred in overruling the motion to transfer is untenable. This ruling also answers defendants' contention that there was a misjoinder of parties, and that the joining of Garrity as a party defendant was a mere subterfuge to circumvent the transfer of the case to the Federal court. We think this position is without merit inasmuch as charges of negligence on the part of Garrity were incorporated in the petition. The question of good faith in joining parties defendant is one for the jury. If the action is brought in good faith the joinder is not rendered fraudulent by the fact that the motive was to prevent removal of the cause to the Federal court. [Whiteaker v. Railroad, 252 Mo. 438.]

It is charged the court erred in refusing defendants' instruction No. 6 which sought to tell the jury that, as a matter of law, there was no evidence tending to show any aggravating circumstances attending the injury and death involved, and of the alleged negligence of defendant. If, as a matter of fact, there had been no evidence presented touching this point, there might be some basis for this charge. But the record shows there was evidence that the doors of the elevator, except at the first floor, at the time of the accident and for some time previous, had been in such condition that they would not latch; that this condition was known both to the operator of the elevator and to the son of defendant Short who was manager of the building; and that the operator of the elevator attempted to run the car from the basement, though he knew the condition of said doors. It was a

question for the jury as to whether or not these facts constituted "aggravating circumstances" as charged in the petition. [Reel v. Investment Co., 236 S. W. 43 (Mo.); Grier v. Railway Co., 286 Mo. 523, 228 S. W. 454.] We rule against defendants on this point.

It is charged the court erred in refusing the demurrers offered at the close of all the evidence. The basis of this charge is that at the time of the accident the Williams boy was not a passenger, but was either a licensee or a trespasser, and that under the facts in evidence, defendants owed him only the negative duty not wantonly or wilfully to injure him.

It is well to remember that the building in question, as shown by the evidence, was a public office building, and it has been held that one who rides in an elevator in a store, hotel or public office building is a passenger for hire because the compensation is the rental paid by the tenants and for which the operator of the building undertakes to carry such tenants and their visitors by the elevator. [Goldsmith v. Bldg. Co., 182 Mo. 597, 81 S. W. 112; Howard v. Scarritt Est., 161 Mo. App. 552, 144 S. W. 185.] In the last-named case defendant owned a public office building in which the offices were leased to tenants and for use of the public using such building defendant maintained and operated certain passenger elevators. A father and mother with their minor son, not quite four years of age, entered one of said elevators with the intention of going to the fifth floor in order that the child might use the toilet room on that floor. At the same time another passenger entered the elevator to go to the second floor. When the elevator arrived at the second floor, it stopped and the gate was opened for him to get out. After he had alighted the elevator started up and before the door was sufficiently closed, the little boy either fell out or stepped out, fell to the bottom of the shaft and was killed.

Although the defendants in that case asked an instruction to the effect that plaintiffs did not go into the building on business with defendant or any of the ten-

ants of the building, and only for the purpose stated, therefore the defendant owed them no duty except the negative duty to refrain from wantonly or wilfully injuring them, this view was apparently abandoned by defendant on appeal. Thus tacitly defendant admitted that plaintiffs were passengers and as such, it was the duty of the operator to exercise the highest degree of care which a person of ordinary prudence would have exercised in a similar situation. The cause was reversed and remanded for a new trial for errors in instructions, but the court cited with approval the case of Lee v. Knapp & Co., 155 Mo. 610, wherein it is said that "carriers of passengers by elevator are required to exercise the highest degree of care and skill for the personal safety of its passengers." Also the court cited with approval the holding in Becker v. Real Est. & Bldg. Co., 174 Mo. 246, and Orcutt v. Bldg. Co., 210 Mo. 424, saying, "it is said there is no distinction in law between the duties and liabilities of a carrier of passengers by an elevator and one by a railroad."

On another trial the Howard case resulted in a verdict for plaintiffs for $10,000, and the case was appealed to the Supreme Court. [Howard v. Scarritt Est. Co., 267 Mo. 298.] The defense that plaintiffs' son was either a trespasser or a mere licensee did not arise at the second trial and apparently was abandoned by defendant. We see in the facts of the case at bar a much stronger position for appellant than was presented in the Howard case.

As a further assignment of error it is declared (a) that defendants Short and Garrity are not properly chargeable with the acts of trespasser Gray, and (b) that the court erred in refusing defendants' instruction No. 10. This contention is without merit since the cause is bottomed upon the negligent condition of the elevator and its negligent operation from the basement by Garrity. There is no charge that Gray was negligent. The evidence shows deceased offered himself as a passenger at the first floor and was carried by the regular oper-

ator to the fourth floor. There was an implied obligation to take him down. It was held in Glaser v. Rothschild, 221 Mo. l. c. 186:

"The invitation may arise by dedication from known customary use or by any state of facts upon which it naturally and reasonably arises."

The ruling of the Supreme Court in that case was that defendant was a common carrier. Defendants' refused instruction No. 10 had to do with the relation existing between defendant and deceased and embodied defendants' theory which we have held to be erroneous. The refusal of the instruction was not error.

For reasons above stated, the judgment should be affirmed. It is so ordered.

All concur.