## JOHN H. COSSITT v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

**Division Two, December 14, 1909.**

1. **NEGLIGENCE: Alighting from Car: Falling Into Ditch: Proximate Cause.** Where the passenger requested the conductor of the street car to let him off at a certain station, and as the car approached that station he arose and went to the end of the car, but it did not stop there, but after it had gone by more than a hundred feet the conductor recalled the request, and stopped the car and permitted (practically invited) him to get off, and he did so, in the dark, and without notice of a deep ditch near by, into which he fell while endeavoring to find his way and was injured—the conduct of the conductor in failing to stop the car at the station, was the proximate cause of his injuries.

2. ————: **Duty of Carrier to Passenger.** It is elemental that it is the duty of a carrier of passengers to safely carry them to their places of destination and to put them off at safe places.

3. ————: ————: **Mistaking Culvert for Platform: No Warning of Danger.** If there was no light, and the passenger, having been invited by the conductor to alight, and he supposed he was alighting at the station named, he is not to blame, if in endeavoring to find his way, he, guided by the faint light of the disappearing car, mistook a culvert over a deep ditch for the station platform, and if there was no light at the station he was not to blame that he did not walk along the tracks back to the station—the conductor having given him no directions to the station, and no warning of his dangerous surroundings.

224 Sup—7

4. ———: ———: **Discharge at Wrong Place.** If a passenger, instead of being discharged at the place called for in the contract of carriage, is discharged, in the nighttime, at another place, and in an endeavor to find his way and making use of such light as is available he walks upon a culvert over a deep ditch, by mistake supposing it to be a platform leading to the street, and not knowing of the existence of the ditch, and not being warned, he falls into the ditch and is injured, the danger is such as the carrier ought to have foreseen, and the injury is a probable and proximate result of his discharge in the wrong place.

5. ———: ———: **Alighting in Safety.** The carrier is not absolved from its negligent act in carrying the passenger beyond his destination and putting him off in the dark, by the mere fact that he was not hurt in alighting and did not immediately fall into a near-by ditch.

6. ———: ———: **Contributory Negligence.** The passenger notified the conductor that he wished to get off at Clara Avenue Station, and when the passenger thought the car was nearing that station he went out on the car platform. There was no light at the station and he did not see the station, and the time was about eight o'clock p. m. in September. The passenger had never been beyond this station on this line and was not acquainted with the surroundings. After the car had passed the station, the conductor said to him, "You wanted Clara Avenue?" and the passenger answered, "Yes." Thereupon, about one hundred feet west of the station the car was stopped, and the passenger got off. By the light of the receding car he saw what he supposed was a platform, and following it, he fell into a deep ditch and was injured. *Held*, that he was not guilty of contributory negligence.

7. ———: **Pleading: Proof: Variance.** Allegations that plaintiff sustained a double fracture of the right thigh bone between the knee and the hip, that he was greatly and permanently injured, and sustained other cuts and wounds, and that by reason of such injuries he was compelled to lie constantly on his back for more than thirteen weeks, are broad enough to cover proof of a stiffened knee, where the testimony is that the stiffened knee was the result of the fracture and a natural result. The stiffened knee was such general damages as the law implies from the injury, and need not be pleaded.

8. ———: **Instruction: Covered by Others.** It was not error to refuse defendant's instruction to the effect that if the passenger knew he had been carried past his place for leaving the car, it was his duty to walk back to that place, before attempting to cross to his street, where the court in another instruction

submitted to the jury the question of the passenger's knowledge as to whether he had been carried beyond the place for alighting.

9. ———: **Walking on Track to Street.** It is not the duty of a passenger, let off of the car, in the dark, between stations, to walk along the company's tracks to the next station or back to the one where he wished to alight, where he knew nothing about the safety of the tracks and there were no lights.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Boyle & Priest, R. E. Moloney* and *T. M. Pierce* for appellant.

(1) The court erred in refusing to give, at the close of the case, an instruction in the nature of a demurrer to the evidence, at the request of the defendant. (a) Because plaintiff did not prove that defendant's negligence, if any, was the proximate cause of his injuries. Haley v. Railroad, 179 Mo. 30; Railroad v. Kellogg, 94 U. S. 469; Fairbanks v. Kerr, 70 Pa. St. 86; American Brewing Assn. v. Talbot, 141 Mo. 638; Winkler v. Railroad, 21 Mo. App. 106. (b) Because the evidence shows that the plaintiff, had he exercised ordinary care for his own protection, could have discovered the peril of the position in which he was placed and could have avoided injury, and the plaintiff voluntarily chose a dangerous way when he had knowledge of a safe route, and his actions, therefore, directly contributed to cause his injuries. 5 Thompson on Negligence, sec. 6247; Irion v. Saginaw, 120 Mich. 245; Wheat v. St. Louis, 179 Mo. 572. (2) The court erred in permitting the plaintiff to prove and recover for a permanent injury to his knee when no such injury had been pleaded in his petition. 5 Ency. Pl. and Pr., 748-750; O'Leary v. Rowan, 31 Mo. 117; Brown v. Railroad, 99 Mo. 310; Dunn v. Railroad,

105 Mo. 455; Coontz v. Railroad, 115 Mo. 669; Slaughter v. Railroad, 116 Mo. 269; Nicholson v. Rogers, 129 Mo. 140; Fuller v. Mayor, 92 Mich. 197; I & G. N. R. Co. v. Beasley, 9 Tex. Civ. App. 569; 2 Greenleaf on Evidence (15 Ed.), sec. 88, 89.

*Willi Brown* for respondent.

(1) The general principle of law is that it is the duty of a railroad carrier to deposit its passengers at a safe place, especially after dark. Winkler Case, 21 Mo. App. 106. Corollary (a). Where the physical surroundings of the place where a passenger is allowed to alight are dangerous, the defendant is liable to a passenger for injuries which happen in consequence of such dangerous surroundings. Atkinson v. Railroad, 90 Mo. App. 489. Corollary (b). The hurt is the proximate consequence of putting the passenger off in proximity to a danger. Evans v. Railroad, 11 Mo. App. 463; Griffith v. Railroad, 98 Mo. 168; Adams v. Railroad, 100 Mo. 555, cited in Hutchinson on Railroads (2 Ed.), sec. 617, n. 3. Corollary (c). If the train overshoots the station platform it is the duty of the carrier to back the train to the station and to warn the passenger of any danger incident to alighting at that point. 2 Woods on Railroads, 1894, sec. 312, p. 1353. Corollary (d). In Missouri the rule is that a carrier is liable for damages for carrying a passenger by a station. Trigg v. Railroad, 74 Mo. 147. 2. The question whether or not plaintiff exercised ordinary care was a question of fact for the jury. 3. It is the duty of a railroad carrier of passengers to have its stations properly lighted at night. Gerhart v. Railroad, 110 Mo. App. 105; Evans v. Railroad, supra. So that the passenger can proceed with safety, in the exercise of care, along the usual course taken by passengers to the place where they would leave the platform. Gerhart v. Railroad, 110 Mo. App. 105. 4. The

plaintiff was invited to alight. (a) "The station Paris was announced, thereby inviting plaintiff, nothing to the contrary appearing, to get off when and where it (the train) stopped." McGee v. Railroad, 92 Mo. 208, cited 11 times in Missouri cases. (b) Slowing up a street car is an invitation to get on. Spencer v. Railroad, 111 Mo. App. 653. 5. Knowledge of imminent danger of the culvert. "The law presumes that the defendant's agents are familiar with the immediate physical surroundings of its tracks." Atkinson v. Railroad, 90 Mo. App. 489. 6. "The conductor's failure to warn and inform the passengers of the dangerous character of the surroundings (was) gross negligence." McGee v. Railroad, 92 Mo. 208; Griffith v. Railroad, 98 Mo. 168. (2) (a) The injury to the knee was the natural result of the severe injury to the thigh bone which forms part of the knee; and the stiffening of the knee, by the growth of fibres, while the thigh bone was mending, was the reasonable, natural, and necessary consequence of the injury to the thigh bone. (b) The proof of actual damages may extend to all facts which occur and grow out of the injury, even up to the day of the verdict. 2 Greenleaf, Ev., secs. 89 and 268a; 5 Ency. Pl. and Pr., 747, 748, 749; Brown v. Railroad, 99 Mo. 310. (c) The Missouri rule is that special damages must be stated in the petition with a reasonable degree of particularity; and it must be shown the damage is the natural, though not necessary, consequence of the wrong. Brown v. Railroad, 99 Mo. 310.

FOX, J.—This is an action brought by the plaintiff for damages sustained by him in the city of St. Louis on the 18th day of September, 1903. In the petition it is alleged that on the said 18th day of September, 1903, about eight o'clock p. m., and after dark, at or near the corner of Vandeventer avenue and Morgan street, the plaintiff became a passenger on one of defendant's street cars for a trip westwardly, and paid his fare;

that plaintiff was a stranger in said city, and soon after entering the car requested the defendant's conductor to stop the car for him to alight at a station on defendant's said railway known as Clara Station, which was a regular stopping place for passengers to alight. It is alleged that it was the duty of the defendant's servant to carefully and safely carry the plaintiff to said Clara Avenue Station, and safely and without negligence land him and allow him to alight from said car at said station and for that purpose to stop said car at and opposite a platform of said station, and that when a car was stopped opposite said platform it was safe for passengers to get out of the same whether day or night, but that defendant's agents and servants negligently failed to stop said car at said Clara Avenue Station, but carried plaintiff one hundred feet beyond the same; that plaintiff on said trip was seated in said car and believing he was near said station, arose and walked to the rear platform, and after being there awhile, the conductor stopped said car and invited and directed plaintiff to alight at said point one hundred feet west of said Clara Avenue Station on defendant's right of way; that plaintiff thereupon alighted after dark upon defendant's right of way where said car stopped as aforesaid, and did not know and could not see where he was, but supposed he was at a point near the said platform, and plaintiff states that the place where he was invited, directed and permitted to alight from said car was an unsuitable and dangerous place after dark to land a person alighting there by reason of the fact that a person so getting off of said car could not proceed southwardly to the public streets by reason of fences and sheds along defendant's right of way, and northwardly there was a steep descent of about five feet from said railways embankment, and in a westwardly direction there was a dangerous ditch, sewer or culvert, crossing defendant's right of way about fifty feet distant; that de-

fendant's agents on said occasion wantonly, and with gross negligence, gave him no warning that said culvert or ditch was near to the westward point where he alighted, and gave him no directions how to reach a place of safety, and with gross negligence failed to give him notice that he had passed Clara Avenue Station or that he had not landed in close proximity to the same; that after alighting, plaintiff looked back and could see no platform, there was no light at said Clara Avenue Station, and by the light of the rapidly receding car he caught a glimpse of a platform crossing defendant's tracks distant about fifty feet, which platform was similar in appearance to the platform crossing defendant's tracks at said Clara Avenue Station, and which said platform which he saw was over said sewer, ditch or culvert and extended about six inches southwardly of the south rail of the southernmost track of the defendant's railway and there ended abruptly. That said platform or crossing over said ditch or culvert was the nearest platform to the place where plaintiff alighted and being apparently the Clara Avenue Station platform, and plaintiff being unable by reason of the darkness to see his way, in attempting to continue his journey to a public highway on foot, walked on and along defendant's right of way to and upon said platform or crossing over said ditch, sewer or culvert and southwardly upon the same towards Cabanne avenue, which he was seeking, and fell off of the end of the said platform down a distance of about eighteen feet on to the ground and into said ditch, sewer or culvert, and was greatly and permanently injured, sustaining a double fracture of the right thigh bone between the knee and hip; three of his front teeth were driven inwardly, his face and hands cut and he sustained other cuts and wounds, and by reason of which he was obliged to lie constantly on his back for thirteen weeks, and was confined in a hospital for more than four months. That plaintiff had alighted

prior to said occasion two or three times at said Clara Avenue Station. There is a platform crossing said defendant's tracks similar in appearance to the platform from which plaintiff fell as aforesaid, but which leads to steps descending about five feet or more to a walk upon which passengers can safely reach Cabanne avenue, which plaintiff was seeking to reach on the occasion aforesaid and plaintiff avers that in walking southwardly on said platform, when he was hurt, he followed the custom which he had theretofore pursued at the several times he had landed at the said station and had walked southwardly on the platform there on his way to Cabanne avenue. Plaintiff states that the defendant and its servants in charge of its said car were guilty of acts of gross and wanton negligence in carrying him past Clara Avenue Station as aforesaid, in stopping said car and inviting, requesting, directing and permitting him to alight where he did as aforesaid; in not giving him notice that he had passed said station as aforesaid; in not giving him any notice which way to proceed to reach a place of safety; in not giving him any notice of the proximity of the said dangerous crossing over said culvert, ditch or sewer and in not giving him any notice of the danger of walking westwardly along its said tracks, which acts of negligence each and all directly contributed to plaintiff's injuries, and the defendant was further grossly negligent in not having a light burning at said Clara Avenue Station at the time plaintiff alighted as aforesaid, which said negligence also directly contributed to his injuries.

The damages were laid at ten thousand dollars compensatory and five thousand dollars punitive.

The answer was a general denial coupled with a plea of contributory negligence.

The reply was a traverse of the new matter in the answer.

The evidence tended to show that on the 18th day

of September, 1903, about eight o'clock at night, the defendant received the plaintiff as a passenger on one of its street railway cars in the city of St. Louis and undertook to transport him westwardly to one of its stations located on Clara avenue. The plaintiff was carried about one hundred feet beyond his destination, to-wit, Clara avenue, and alighted from the car about fifty feet from a platform or culvert similar to the one at Clara avenue. Plaintiff testified that when he got on the car he told the conductor that he wanted to get off at Clara avenue. On three occasions before this plaintiff had gone out on one of defendant's cars and had gotten off at Clara avenue. There is a station at this place. On these occasions plaintiff got off on this platform. At these times he described his conduct as follows: "I got off the car at the Clara Avenue Station at the north side, crossed the tracks over the board walk, went down the steps and along the sidewalk to Cabanne avenue and then to Mr. Jarvis's house, about one half block distance." On this occasion, a short time after plaintiff had taken his seat in the car, the conductor came around and collected his fare, and he requested to be put off at Clara avenue, and the conductor said, "All right." Prior to this occasion, the plaintiff had never been west of Clara Avenue Station. When plaintiff thought they were nearing Clara avenue; he got up and went back to the back platform where the conductor was; after standing there a while, the conductor turned around and said, "You wanted Clara avenue?" and plaintiff said, "Yes," and then the conductor stopped the car and plaintiff got off. He looked to see if he could see the station, but it was dark and there was no light. It was then about eight-thirty, between eight and eight-thirty in September. He testified that as the car was going by he saw by the lights therein, some planks which he thought was a crossing of the railroad track, and he walked down to these planks,

and started towards Cabanne avenue. He walked across on these boards or planks and fell over the edge into a sewer or ditch. Cabanne avenue runs parallel with defendant's railroad track at this point and is about a half block south. The sewer or ditch into which plaintiff fell was from fifteen to eighteen feet deep and the fall broke his right thigh, knocked in some of his teeth, cut his lip and bruised his hand, and from these injuries he was compelled to remain in the hospital for twenty-three weeks. There were also injuries to his knee.

There was no light at the Clara Avenue Station that night. The defendant offered evidence tending to show that on the night of the injury, the plaintiff stated to two different persons that he knew he was being carried past Clara Avenue Station, and when he got off the conductor told him to go back. But the plaintiff in rebuttal contradicted the evidence of Doctor Ambrose as to his alleged statements to him.

## OPINION.

### I.

On two grounds, the defendant insists the plaintiff did not make a case entitling him to recover— *first,* because the testimony did not establish any proximate connection between the fact that the plaintiff was negligently carried past his destination and his subsequent falling into the ditch, under a mistaken idea of his surroundings, and *second,* because plaintiff's contributory negligence, in failing to look about him after he alighted from the car, ought to debar his recovery. These propositions will be considered in their order.

Was the conduct of the conductor in failing to stop the car at Clara Avenue Station as he had been requested by plaintiff and had agreed to do, and in stopping the car, in the nighttime and, at least practically, directing him to get off in close proximity to

the culvert, into which he fell while endeavoring to find his way to Cabanne avenue, the proximate cause of plaintiff's injuries? We think it was, on principle and according to the great weight of authority in this and other states. It is elemental that it is the duty of a carrier of passengers to safely carry them to their places of destination and put them off at safe places. [McGee v. Railroad, 92 Mo. 208; Griffith v. Railroad, 98 Mo. 1. c. 174.] By their verdict the jury found that when the plaintiff began his journey on this car that night he requested the conductor to put him off at Clara avenue, and the evidence all concurs in establishing that the night was dark and there was no light in the Clara Avenue Station when the car reached that point and the conductor did not stop the car at that station, but carried plaintiff about one hundred feet beyond or west of the station, when he said to plaintiff, "You wanted Clara avenue?" and plaintiff said, "Yes." Thereupon the car was stopped and plaintiff alighted. It is too plain for discussion that this was an invitation and direction by the conductor to plaintiff to alight at this point and was tantamount to an assertion that this was Clara avenue and plaintiff was justified in acting upon that statement. In Winkler v. Railroad, 21 Mo. App. 1. c. 106, it was said: "If a passenger, instead of being discharged at the place called for in the contract of carriage, is discharged in the *nighttime at another place, so that* in getting to his place of destination it becomes necessary to walk along a path containing a dangerous obstruction, it is not too much to say that the danger of being injured by such obstruction is a danger which the carrier ought to foresee, and that it is not an unnatural, improbable, or remote consequence of the act of discharging the passenger in such a place."

Counsel for the defendant says it is a very reasonable requirement to say that a carrier should anticipate when it puts a passenger off in the darkness and

knows that he must walk back over the right of way, that he may fall into certain pitfalls or stumble into concealed dangers, but asks how it can be said that a carrier will suppose that a passenger will mistake a culvert, perfectly safe to pass over, for a platform, and walk off of it? The obvious answer to this contention is that by its neglect of the plain and simple duty of stopping the car at Clara Avenue Station and putting plaintiff off, it had caused him to alight in the dark in close proximity to the dangerous culvert and under the belief that he was near to the Clara avenue platform, and by its wrongful act having placed plaintiff in this dangerous place it cannot escape from the consequences of its neglect because plaintiff in good faith and in the dark mistook the planks on the culvert for the Clara Avenue Station platform, and in his effort to reach Cabanne avenue fell into the culvert. Certainly it is in no position to complain as it does that he did not walk along its tracks directly back to the said station when there is positive evidence that there was no light at the said station and the conductor gave him no directions to reach the station, nor any warning of his dangerous surroundings.

This court, in McGee v. Railroad, 92 Mo. l. c. 219, adopts with approval the language of Beach on Contributory Negligence, page 71, sec. 23, as follows: "When defendant by his own negligent or wrongful acts or omissions, throws plaintiff off his guard, or when the plaintiff acts in a given instance upon a reasonable supposition of safety induced by the defendant, when there is, in reality, danger to which plaintiff is exposing himself in a way and to an extent which, but for the defendant's inducement, might be imputed to the plaintiff as negligence, sufficient to prevent a recovery, such conduct on the part of plaintiff, so induced, will not constitute contributory negligence in law," etc. Granting that plaintiff was confused, having just alighted from a brilliantly lighted electric car,

into a dark and strange place, surely it was not his fault that, relying upon the implied assurance that he was at Clara Avenue Station and discerning what appeared to him, in the passing light, to be the station platform, he wended his way in that direction.

Nor is the defendant absolved from its negligent act in carrying plaintiff beyond his destination and putting him off in the dark by the mere fact that he was not hurt in *alighting,* or did not immediately fall into a culvert or ditch. The rule is by no means so restricted. As was said in Atkinson v. Railroad, 90 Mo. App. l. c. 497: "Had the physical condition of the locality where he alighted been unsafe and dangerous by reason of ditches, embankments, bridges, cattle-guards or like things, and the plaintiff had been injured by reason thereof in making his way to the station, the defendant would have been liable under the authorities, for the law presumes that the defendant's agents are familiar with the immediate physical surroundings of its tracks. The injury would have been within the reasonable expectation of the wrongful act of putting him off of the train at an unsafe place." [Rigby v. Hewett, 5 Excheq. 243; Rearden v. Railroad, 215 Mo. 105.]

The second point has even less merit. The defendant was distinctly notified that plaintiff desired to get off at Clara Avenue Station when the conductor received his fare, and when plaintiff thought he was nearing that station he went out on the rear platform. There was no light at the station and he did not see it. He had never been west of that station on this line and consequently was necessarily unacquainted with the surroundings. The conductor, by inquiring if he wanted to get off at Clara avenue and receiving an affirmative reply and then stopping the car, plainly intended to direct the plaintiff to alight where he did and plaintiff in the absence of any and all directions how to reach the passway to Cabanne avenue or to

get to the station, whether to go back or forward, had a right to think he was in a safe place, and there is nothing in the evidence which would have justified the circuit court in instructing the jury that plaintiff was guilty of such contributory negligence as would bar his recovery. Whether or not he did exercise ordinary care in attempting to extricate himself from his position was fairly submitted to the jury, and they have found for him on that issue.

## II.

Error is predicated on the admission of evidence on the part of the plaintiff to the effect. that one of his knees had been injured by the fall and had become stiff. The contention is that the petition was not specific enough to justify this testimony.

The allegation as to the injuries was as follows: "Plaintiff fell off of the end of said platform down a distance of about eighteen feet to the ground and into said ditch, sewer or culvert and was greatly and permanently injured, sustaining a double fracture of the right thigh bone between the knee and hip; three of his front teeth were driven inwardly, his face and hands cut and he sustained other cuts and wounds, and by reason of said injuries he was obliged to lie constantly on his back in bed for more than thirteen weeks continuously and was confined to a hospital for more than four months."

Among other witnesses, Dr. Warren B. Outten testified on behalf of plaintiff. He was and is a surgeon of great experience. He took charge of plaintiff at the Baptist Hospital the night he was hurt. He found upon examination that plaintiff was suffering from a fracture of the thigh and a contused and lacerated wound on the right side of the knee. After detailing the character of splint used for the purpose of extension to prevent any shortening of the leg and the length of time plaintiff was kept in the hospital, some twenty weeks, he stated they put the limb in plas-

ter of paris and that he had examined the plaintiff the Sunday before the trial and found the bones had knitted and that the result was perfect, there was no shortening of the limb but there was an anchylosed knee. In regard to this he explained: ''Very frequently, after treating any fracture of the thigh, and the part is kept under imposed rest, say ten or twelve weeks, the knee becomes stiffened in consequence of the disposition of fibrinous matter. Owing to the stiffening, why the consequence is, he can bend it only to a certain extent; and it is this treatment of imposed rest, along with that, that there might have been some contusion of the joint at the time of the injury, which, of course, we did not determine the exact amount of because there was no necessity for doing that. . . . There was left a deposit there and this produced a thickening of the cartilages and a stiffening of the knee.'' After Dr. Outten had given this evidence the record shows that Mr. Brown, attorney for the plaintiff, remarked, ''It is understood that Mr. Chandler is objecting to every thing about the knee.'' The Court: ''Yes, sir.'' Mr. Chandler: ''We do object to all the evidence with regard to the knee and it is understood that our objection applies to all that is gone in.'' The Court, ''Yes, sir, and it is overruled.'' To which ruling, counsel for defendant duly excepted. It will be observed that there was no ground whatever stated for the objection at the time. If this were all, this point could be readily disposed of, but it appears that when the plaintiff himself was on the stand, his counsel inquired if there was any other injury and he answered, ''I bruised my knee.'' Whereupon counsel for the defendant moved to strike out the statement of the injury to his knee on the ground that the petition made no claim for damages for such injury. Which motion the court overruled and counsel excepted.

By section 655, Revised Statutes 1899, it is provided: ''No variance between the allegation in the plead-

ing and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defence upon the merits; when it shall be alleged that a party has been so misled, that fact shall be proved to the satisfaction of the court, by affidavit showing in what respect he has been misled, and thereupon the court may order the pleading to be amended upon such terms as shall be just.''

In Fisher Co. v. Realty Co., 159 Mo. 567, it is said: ''That a party cannot declare upon one cause of action and recover upon another, is axiomatic in our law. But it is also equally well settled in our State that timely and appropriate objection must be made to the introduction of the evidence offered on the distinct ground of a variance between the *allegata* and *probata,* and that the objecting party must proceed in the manner provided by section 2096, Revised Statutes 1889, otherwise his objection will not be considered. [Briggs v. Munchon, 56 Mo. 467; Ely v. Porter, 58 Mo. 158.] And the affidavit setting forth in what respect a party has been misled is the sole test of the materiality of a discrepancy between the *allegata* and *probata.* [Turner v. Railroad, 51 Mo. 501; Meyer v. Chambers, 68 Mo. 626; Olmstead v. Smith, 87 Mo. 602.] If a party fails to avail himself of section 2096, supra, in the trial court, it is too late to complain in the appellate court.''

The defendant in this case pursued no such course, but independently of this statutory provision for saving the point as to a variance we think that the allegations of the petition were broad enough to cover the proof as to the stiff knee. Dr. Outten's testimony shows that that was the result of a fracture of the thigh bone and was a natural result. In Brown v. Railroad, 99 Mo. 317 to 319, inclusive, Judge BLACK speaking for this court pointed out that general damages are such as the law implies or presumes to have occurred from the wrong complained of, and they need not be pleaded. In such cases, the wrong itself fixes the right of

action. Special damages are such as really take place, and are not implied by law; they are either superadded to general damages arising from an act injurious in itself, or are such as arise from an act not actionable in itself, but injurious only in its consequences. Special damages must be stated in the petition with a reasonable degree of particularity, and it must appear that the damage is the natural, though not the necessary, consequence of the wrong. Dr. Outten's testimony shows that the stiffening of this knee was a natural and very frequent consequence of a fracture of a thigh bone. And we think that the allegation of the fracture of the thigh bone, with the other allegation plaintiff was greatly and permanently injured and sustained other cuts and wounds and by reason of said injuries was compelled to lie constantly on his back for more than thirteen weeks continuously, furnishes a sufficient basis for this proof in the absence of the affidavit which the law requires on the part of the defendant to show that it had been misled to its damage by reason of not specifying particularly the stiff knee.

### III.

Complaint is made that the court refused the following instruction asked by the defendant:

"The court instructs the jury that if they believe from the evidence in this case that plaintiff knew he had been carried past Clara avenue at the time he alighted from the car in question, then it was his duty to walk back to Clara avenue, and the jury will find for the defendant."

The court had already submitted to the jury in its first instruction the question as to plaintiff's knowledge at the time he alighted from the car, that he had been carried past Clara Avenue Station, and there was no error in refusing this instruction.

The court also refused another instruction requested by the defendant as follows:

224 Sup—8

"The jury are instructed that if plaintiff might have safely passed over defendant's tracks from the point where he alighted to Goodfellow avenue, or might have returned in safety to so-called Clara avenue, but instead thereof negligently elected to take his chances in the darkness and was hurt in consequence, he cannot recover in this action."

There was no testimony in the case that defendant's tracks were safe for a stranger to walk on in the nighttime. This instruction assumes the law to be that it was the duty of the plaintiff, let off, as he was, in the dark, between stations, to walk along the defendant's right of way to the next station. It is absolutely certain that the plaintiff had never been past the Clara Avenue Station and knew nothing about whether the track was safe or not in that direction and having just left an electric lighted car and stepped out in the darkness his vision would naturally not be very good, and there was no light burning at Clara Avenue Station to guide him in the darkness in that direction. We think there was no error whatever in refusing this instruction, as the court in its first instruction properly laid down plaintiff's obligation in the premises when it told the jury that if they believed from the evidence that plaintiff, in ignorance of the fact that he had been carried beyond Clara Avenue Station, upon the said car being stopped alighted from the same, and in the exercise of ordinary care for his own safety proceeded to go to his own destination and in so doing fell from the platform over defendant's tracks, which was near the place where plaintiff alighted, and into a ditch or sewer on defendant's right of way and was thereby injured, then they would find for the plaintiff.

The case seems to have been carefully and well tried and there is no question whatever but that the plaintiff suffered a very painful and serious injury, and there is no suggestion that the damages awarded him are excessive. Judgment is affirmed. All concur.