MAUDE E. JENKINS v. MISSOURI STATE LIFE INSURANCE COMPANY, Appellant.—69 S. W. (2d) 666.

Division One, March 14, 1934.

*Allen May, Williams, Nelson & English* and *McAllister, Humphrey, Pew & Broaddus* for appellant.

*Russell Field* and *Mosman, Rogers & Buzard* for respondent.

HYDE, C.—This is an action for damages for personal injuries. Plaintiff was a guest at the Alcazar Hotel in Kansas City and was injured by a fall when she stepped out of the elevator there. Plaintiff's petition charges, as negligence, failure to bring the elevator to a level with the third floor so that plaintiff might alight therefrom with reasonable safety, by reason of which she was caused to fall and was injured. Plaintiff had a verdict for $10,000, and from judgment entered thereon defendant has appealed.

Considerable evidence appears in the record upon the issue of whether defendant was actually in possession of and operating the hotel at the time. However, defendant apparently concedes that the evidence was sufficient to make this a jury question and assigns no error as to the submission of this matter. There were two accounts concerning the accident: One, given by plaintiff, and the other, given by the operator of the elevator. Plaintiff testified that she got in the elevator to go from the lobby to the third floor; that when the operator stopped the elevator there she glanced down before starting out, but that the elevator and hall were dimly lighted and she did not notice whether or not the elevator floor was level with the floor of the hall. She said that, when she attempted to step out, she struck her foot against the wall of the elevator shaft which caused her to plunge "right out through the opening of the elevator door into the hall," breaking her right arm at the elbow joint. The operator of the elevator said: "I took her up to the third floor, and the car was level with the floor, and she got off and when she got off she turned around and started to say something to me, and when she turned back she fell over."

The elevator was run by electricity and could be operated by the guests by means of an automatic button, which would cause it to move to and stop at the desired floor. Plaintiff said that she never had used the elevator in this manner. When the regular operator was in charge he operated it by a lever. He said that the gate of the elevator and the doors of the elevator shaft would not open unless "you get level with the floor" and that "if you get below the floor or above it you couldn't open the door." He said, however, that the elevator could be stopped between floors by means of the lever and also that "if you were running the car and they should blow a fuse or something up above, why, you would naturally—it

would stop below the floor, and at that time I would tell them, if there was anybody on there, to watch their step." He also said, on cross-examination, that on numerous occasions he had said to ·people "watch your step" or "watch out," or "watch the floor," and· admitted that the purpose of such a statement "was to keep the party from tripping over·the elevator floor or the wall of the building." He said, however, that he did not say "watch your step" to plaintiff on this occasion and insisted that the car floor was then level with the ·third story floor.

■ Defendant makes no specific assignment of error concerning the refusal of its demurrer to plaintiff's evidence. It does make an assignment that plaintiff's verdict is not supported by the evidence and argues in support thereof that the operator could not have been negligent because the evidence shows "that he had no control over the position of the elevator when the doors were opened." Defendant assumes that the evidence is conclusive that the doors could not be opened unless the elevator floor was flush with the floor of the hallway. Defendant overlooks the admission of the operator, above quoted, that the elevator was at times stopped below the floor and that at such ·times he would tell passengers to "watch their step." Plaintiff's evidence ·tended to show that the elevator was not flush with the hallway and that *the doors were opened*. Defendant·says even that only tends to show that the elevator might have been out of adjustment and not that the operator was negligent. But, if it was out ·of adjustment was he not negligent in opening the doors without warning before he brought it to a reasonably safe level? Whether on ·this occasion the operator· did bring the elevator to the third floor level or was negligent in his operation of it was for the jury. For a very similar case of negligence in failing to stop an elevator at ·a reasonably safe level with the ·floor of the building see Perrault v. Emporium Department Store (Wash.), 128 Pac. 1048, where a plaintiff was caused to fall by the difference in levels.

■ Defendant's principal contention is that plaintiff's Instruction No. 1 was erroneous for the following reasons: "That it did not require the jury to find that the failure to stop the elevator on a level with the third floor rendered plaintiff's exit not reasonably safe; . . . that it, in effect, made appellant an insurer; . . . that it did not require the jury to find that appellant in the exercise of due care, should have anticipated that plaintiff was likely to be injured if the elevator was not level with the floor." This instruction was as follows:

"The court instructs the jury that·if you find and believe from the evidence in this case that the defendant, Missouri State Life Insurance Company, was in the possession, management and control of the 'Alcazar Hotel,' mentioned in evidence, at the time plaintiff was injured (if she was), and if you further find that plaintiff

was a guest of said hotel and that on the 1st day of January, 1929, while a guest of said hotel, if so, and while she was alighting and attempting to alight from the elevator mentioned in evidence on the third floor of said hotel, if so, the defendant, its elevator operator and servant in charge of said elevator (if he was a servant and employee of defendant), *negligently and carelessly failed to bring the elevator reasonably to the level of the third floor,* and if you further find that as a direct result of the negligent failure, if so, on the part of said elevator operator to stop said elevator on said third floor level, if he did so fail, plaintiff was caused to stumble over the projecting floor level, if she did, and fall and be injured thereby, then your verdict must be for plaintiff and against defendant.''

The court also, at plaintiff's request, gave plaintiff's Instruction No. 4. which was as follows:

''The court instructs the jury that there is no defense of contributory negligence on the part of the plaintiff pleaded by the defendant in its answer in this case, and therefore, no such issue is before you and you are not called upon in your deliberations to consider at all any question of negligence on the part of the plaintiff; but if you find and believe from the evidence that the defendant or its elevator operator, if you find he was defendant's operator, *was negligent,* if so, *in failing to bring the elevator to a reasonably safe level with the third floor,* if they were thus negligent, and that the injuries, if any, to the plaintiff were caused as a direct and proximate result of such negligence, if any, as submitted and defined in other instructions, then your verdict must be for the plaintiff and against the defendant without regard to any question of negligence on the part of the plaintiff.'' (All italics ours.)

Plaintiff also had another instruction defining the terms ''negligently and carelessly.'' Defendant, upon the issue of negligence, offered only an instruction as to the burden of proof which devolved upon plaintiff. It must be noted in considering this matter that defendant's theory at the trial of this case was not that plaintiff was guilty of any negligence in stumbling over an obstruction made by stopping below the level of the third floor, nor that stopping below it would make a reasonably safe means of exit, but that defendant's defense was that the elevator was not stopped below the third floor. Defendant's evidence was that the elevator was stopped level with the floor of the hallway; that it could not have been otherwise than level or the doors could not have been opened; and that plaintiff did not stumble over or strike her foot against the wall of the shaft in getting out of the elevator, but fell after she had left it and had safely reached the hallway floor.

Plaintiff's Instruction No. 1 is perhaps too general in only requiring the finding that operator ''negligently and carelessly failed to bring the elevator reasonably to level of the third floor.'' If the matter

had been left that way it might with some reason be said that the jury was given a roving commission and left to set up its own standards. The matter was made more definite, however, by plaintiff's Instruction No. 4, which required a finding that the operator "was negligent in failing to bring the elevator to a reasonably safe level with the third floor." Therefore, the jury was given the test: Was it a reasonably safe condition? Defendant does not contend that, as a matter of law, it was; so that was a jury question and, in fact, the principal jury issue as to negligence. Defendant's contention is that the instruction should have required the jury to find that the elevator was stopped in such a manner "that the exit from the elevator was not reasonably safe for persons to use." We think that the two instructions taken together mean that and that the jury would so understand them. It is true that if an instruction, purporting to cover the whole case and authorizing a verdict, leaves out any facts necessary to be found before the plaintiff is entitled to recover, it is erroneous, and if such an essential fact is left out, it is not cured by another instruction requiring the finding of such fact. In such a situation the two instructions would be conflicting.

However, all instructions must be read and construed together and where taken together, they do contain a complete exposition of the law and cover every phase of the case, a verdict obtained thereon will be sustained, although some of the instructions taken separately may be incomplete and open to criticism. The instruction, covering the whole case and authorizing a verdict, is only cured by other instructions when it does require the finding of all essential elements of plaintiff's case, but states some of them indefinitely or ambiguously or in language which might be misleading. If only such defects appear, then other instructions which clearly and specifically require the finding of these essential elements do not conflict with the instruction covering the whole case but make such matters. as may be too general, clear and definite. If the instructions thus harmonize and clearly state the law when read together indefinite, ambiguous or misleading language in the main instruction is cured by the other instructions. That is the situation here. For a discussion of these principles, and the authorities so holding, see McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S. W. (2d) 37.

It follows from what we have said that the defendant's criticism that plaintiff's Instruction No. 1 made defendant an insurer cannot be sustained. Defendant's argument is that it directed the jury to find for plaintiff "if the elevator was not exactly on or was a fraction of an inch off level with the floor." We hold that the instruction cannot be so construed, but that, on the contrary, it made lack of reasonable safety the test of liability and did require the jury to find that the elevator was stopped on a level which, under the circumstances, failed to create a reasonably safe means of exit.

 As to the contention that the instruction should have required the jury to find that defendant in the exercise of due care should have anticipated that plaintiff was likely to be injured by the manner of stopping the elevator, we think that defendant fails to distinguish the rules applicable to acts of omission in remedying an unsafe condition from those applicable to acts of commission in creating such a condition. [See Davis v. Buck's Stove & Range Co., 329 Mo. 1177, l. c. 1186, 49 S. W. (2d) 47, l. c. 51, and cases cited; as to elevator safety appliances see 57 A. L. R. 259, note; as to obstructions, C. & O. Ry. Co. v. Burton (C. C. A.), 50 Fed. (2d) 730; as to maintaining device of faulty construction see McCullom v. Winwood Amusement Co., 332 Mo. 779, 59 S. W. (2d) 693.] The case defendant cites, Nephler v. Woodward, 200 Mo. 179, 98 S. W. 488, is a case where a carpet with a small hole in it was allowed to remain in the aisle of a theatre. The court pointed out that this did not necessarily create a situation which was dangerous and which reasonable men would be likely to anticipate would cause injury, such as would be the case in leaving open a cellar door in a passageway, which the court said would constitute obvious danger. Where the situation was not one of obvious danger, the court held that the jury should not be permitted to judge by the result alone (plaintiff caught her foot in the carpet and fell) that the condition was a dangerous one but should be required to find that under the circumstances an injury might have been reasonably foreseen. One, who is charged with negligence in failing to remedy some existing condition of his premises, is not under the same duty of watchfulness to discover and prevent danger as one who is actively engaged in transporting persons from one level to another by means of an elevator operating in a shaft, every movement of which creates a new situation. A carrier of passengers by an elevator has the same liability and duty of care for their safety as a carrier by railroad or a carrier of any other kind. One of these duties is to provide passengers a reasonably safe means of exit. A carrier's duty to its passengers consists not only of carrying them safely to their destination but also requires furnishing them a reasonably safe means of their alighting at a reasonably safe place. [Becker v. Lincoln Real Estate & Building Co., 174 Mo. 246, 73 S. W. 581; Luckel v. Century Building Co., 177 Mo. 608, 76 S. W. 1035; Cooper v. Century Realty Co., 224 Mo. 709, 123 S. W. 848; Rearden v. St. L.-S. F. Ry. Co., 215 Mo. 105, 114 S. W. 961; Cossitt v. St. L. & S. Ry. Co., 224 Mo. 97, 123 S. W. 569; Gurtman v. Lusk (Mo.), 208 S. W. 61; Caley v. Kansas City, 226 Mo. App. 935, 48 S. W. (2d) 25; Howard v. Scarritt Estate Co., 161 Mo. App. 552, 144 S. W. 185; Tippecanoe L. & T. Co. v. Jester (Ind.), 101 N. E. 915, L. R. A. 1915E, 721, and note; see, also, Chambers v. Slattery (Wash.), 266 Pac. 185, 57 A. L. R. 959, note 960; Bell v Pittsburgh (Pa.), 146 Atl. 567, 64 A. L. R. 1542;

Gerlach v. Philadelphia (Pa.), 157 Atl. 212; 10 C. J. 869, sec. 1307, pp. 912-918, secs. 1338-1341, pp. 951-953, secs. 1369-1370; 9 R. C. L. 1240, sec. 5, p. 1253, sec. 19.]

Defendant's operator provided the means of exit and created the condition which caused plaintiff's injury by his own act in operating the elevator. Stopping the elevator at the third floor and opening the doors to the hallway was an invitation to plaintiff to leave it. [Grant v. Allen (Ga.), 80 S. E. 279; City National Bank v. Pigott (Tex.), 270 S. W. 234; Tousey v. Roberts (N. Y.), 21 N. E. 399, 11 Am. St. Rep. 655; Gohn v. Butte Hotel Co. (Mont.), 295 Pac. 262.] It amounted to an assurance by the operator that she could do so in safety. Before giving such an invitation and assurance, it was his duty to place the elevator in such a position that plaintiff had a reasonably safe means of leaving it. If he failed to do so, he was negligent and plaintiff could recover for her injuries caused by such negligence, unless barred by her own contributory negligence, which is not claimed here. While the instructions here could properly have been amplified, yet the issues were simple and easily understood by the jury; and the defendant neither saw fit to state to them more particularly the facts which they would have to believe to find negligence nor to give them further information as to the applicable rules of law. We hold that there was no reversible error in plaintiff's instruction.

Defendant also complains that "the court erred in refusing to permit appellant's witness and manager, Vandervoort, to testify that he did not go to the hotel or undertake to exercise any control or management over the same until January 2, 1929." This witness said that he did not remember whether or not he went to the hotel on January first. He was permitted to state fully what he did do at any time he remembered being there and to deny that he made statements testified to by plaintiff's witnesses. There is no merit in this assignment.

Defendant also claims that the verdict is excessive. The material facts which plaintiff's evidence tended to show are as follows:

Plaintiff was a hotel broker and had made from $250 to $300 per month. She was fifty-three years of age at the time of the trial and was separated from her husband. At the time of the trial and for most of the time since her injury, plaintiff was engaged in managing an apartment building in Excelsior Springs, which she had leased. The fall broke the lower end of the bone of the upper arm and some of the fragments thereof were displaced. The muscles and ligaments of the arm were torn loose from their normal attachments and the bones of the elbow joint dislocated. The injury was a very painful one and difficult to treat. Plaintiff employed a regular practitioner, an X-ray expert and a bone specialist. She required treatment for three or four months, during which time she was con-

fined to her room. The total amount she said she paid therefor was $144. The elbow joint is partially ankylosed and plaintiff has a limitation of movement of both flexion and extension of about seventy-five per cent. This is caused by a growth on the end of the bone which formed naturally in the process of healing. The rotation of the forearm is not interfered with, nor is the shoulder movement. Plaintiff does not have full use of her fingers and cannot close her hand entirely. She can pick up a cup and move it up gradually but she finds it difficult to feed herself with her right hand and requires assistance in dressing. The bones at the elbow joint have been placed back in alignment fairly well but the ligaments have not been and cannot be fully replaced to their normal attachments. Plaintiff's medical testimony was that this condition of the arm was permanent; that plaintiff's disability would remain the same; that plaintiff's injury was more serious than a break in the shaft of the bone; that no operation would be likely to improve the joint; and that any operation on it would more likely make the condition worse. Plaintiff seems to have been fortunate in the selection of physicians who were able to reduce the fracture so that it healed in fairly good shape, for the kind of a break it was, without complications or surgical operations and without unusual expense.

Considering the standards adhered to by this court, in cases of similar or more serious arm injuries to younger persons or of comparable injuries to those who were much more dependent upon the use of a crippled arm or leg in earning a living than is the case here, we think that four-fifths of the present verdict would be the maximum which, under our decisions, could be allowed plaintiff for her injury. In Morris v. Atlas Portland Cement Co., 323 Mo. 307, 19 S. W. (2d) 865; Kleinlein v. Foskin, 321 Mo. 887, 13 S. W. (2d) 648; Sullivan v. St. L.-S. F. Ry. Co., 321 Mo. 697, 12 S. W. (2d) 735; Brucker v. Gambaro (Mo.), 9 S. W. (2d) 918; Mahmet v. American Radiator Co. (Mo.), 294 S. W. 1014; Lackey v. Mo. & Kan. I. Ry. Co., 305 Mo. 260, 264 S. W. 807; Parks v. United Railways Co. (Mo.), 235 S. W. 1067; Powell v. Kansas City Rys. Co. (Mo.), 226 S. W. 916; Hulse v. St. Joseph Ry. Co. (Mo.), 214 S. W. 150, larger judgments were reduced and affirmed for amounts from $7,000 to $8,000. In Lepchenski v. M. & O. Ry. Co., 332 Mo. 194, 59 S. W. (2d) 610, where injuries to a man dependent upon physical labor involved his shoulder and chest, as well as arm, the judgment was reduced to $9,000. As said in the Mahmet case, where a $15,000 verdict, which had been reduced to $10,000 by the trial court, was further reduced here to $7,500; "It appears that plaintiff is substantially better situated than if he had lost the entire arm." We think that is true of plaintiff here. In Wolfe v. Payne, 294 Mo. 170, 241 S. W. 915; Fitzsimmons v. Mo. Pac. Ry. Co., 294 Mo. 551, 242 S. W. 915; Foster v. Davis (Mo.), 252 S. W. 433; Thompson v. Smith (Mo.), 253 S. W.

1023; Leighton v. Davis (Mo.), 260 S. W. 986; Rose v. St. L.-S. F. Ry. Co., 315 Mo. 1181, 289 S. W. 913; Cole v. St. L.-S. F. Ry. Co., 332 Mo. 999, 61 S. W. (2d) 344, judgments were reduced from larger amounts to between $10,000 to $12,500, where an arm or leg was amputated; $10,000 being the usual standard where the amputation was below the knee or elbow. Where larger amounts have been allowed there has been shown unusual loss of earnings, or complications, requiring numerous operations and resulting in large expenditures for medical and hospital attention. [See Gordon v. Muehling Packing Co., 328 Mo. 123, 40 S. W. (2d) 693.]

If plaintiff will within ten days enter a *remittitur* of $2,000, as of the date of judgment, the judgment of the trial court will be affirmed for $8,000; otherwise, the judgment will be reversed and the cause remanded. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.