JOSEPH M. SCHONLAU v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Appellant.—No. 40526.—212 S. W. (2d) 420.

Division One, June 14, 1948.

*Warner Fuller* and *Arnot L. Sheppard* for appellant.

1110

*Mark D. Eagleton, Mortimer A. Rosecan* and *Wm. H. Allen* for respondent.

[422] DOUGLAS, P. J.—Plaintiff, a baggage handler employed by defendant railroad at Union Station in St. Louis, recovered judgment against defendant under the Federal Employers' Liability Act for $18,000 for personal injuries, on the ground defendant was negligent in furnishing plaintiff an unsafe place to work. Defendant has appealed.

The main issue on appeal is whether plaintiff's evidence, that the floor of the sub-basement where plaintiff was hauling baggage in a baggage truck was in such a state of disrepair as to make the sub-basement an unsafe place for plaintiff to perform his work, was sufficient to support the verdict or was so self contradictory that it had no probative force. There are other issues about comments made by the trial judge in the presence of the jury, the court's rulings on evidence and instructions, and the amount of the verdict.

The evidence shows that plaintiff and his fellow employe, Frank Streiff, had loaded a baggage truck with baggage in the sub-basement of the station. Such a truck is eight or ten feet long and

about four feet wide, and is propelled by baggagemen. It is pulled by a tongue which is used to guide it. The two men moved the truck toward an elevator by which they would take the truck up to track level where the baggage would be transferred from the truck onto the trains. Plaintiff was pulling the baggage truck by the tongue and Streiff pushing it from the rear. As they neared the elevator a suitcase piled high on the truck was jostled out of place and stuck out over the side of the truck so that the loaded truck would not clear the elevator shaft. The men moved the truck back from the elevator and just around a corner of an intersecting passageway and stopped, and put the suitcase back in place. Then, with Streiff at the rear of the truck, plaintiff grasped the ring at the end of the tongue and attempted to get the truck started and guided to the left toward the elevator. But it was difficult to turn the front wheels of the truck because one of them was in a rut about two inches deep in the asphalt surface of the floor of the passageway. Plaintiff was trying to get the truck loose by pushing and pulling and by trying to turn the front wheels first to one side and then to the other, when the wheel suddenly came out of the rut causing the tongue to break out of his hands. This pulled him off balance and caused him to fall forward over the tongue. He hit the floor with his hands and broke both wrists.

The accident occurred on the ninth day of August. Plaintiff testified that in summer the wheels of heavily loaded trucks would sink into the asphalt floor covering. He testified the asphalt flooring was bumpy and rough because it was full of holes and ruts. One of his witnesses described the floor as "corrugated and corduroyed and wavy . . . it was rough." Defendant's general baggage agent in charge of handling baggage denied the flooring was rough at the spot where plaintiff said the [423] truck was stuck, but admitted there were corrugations in the surface of the flooring along the walls where the trucks were parked. He testified the original asphalt had been put on the floor a good many years ago but it had been constantly repaired; that it was part of his job to keep the floor surface smooth. Other baggagemen testified for defendant that they did not know of the hole or rut at the place where the baggage truck was stuck.

The evidence clearly made a prima facie case of negligence on the question whether the surface of the floor was dangerous for pulling baggage trucks over it at the place where plaintiff was injured. Whether or not the condition of the floor existed as plaintiff claimed was a question for the jury under the circumstances.

Where there is a reasonable basis in the record, as there is in this case, to support an inference by the jury that the injury resulted from defendant's negligence, it has been ruled by the Supreme Court of the United States that in an action under the Federal Employers'

Liability Act an appellate court may not weigh conflicting evidence and arrive at a different conclusion. Lavender v. Kurn, 327 U. S. 645; Ellis v. Union Pacific Railroad Co., 329 U. S. 649. In the latter case the court said: ''The choice of conflicting versions of the way the accident happened, the decision as to which witness was telling the truth; the inferences to be drawn from uncontroverted as well as controverted facts, are questions for the jury. Tennant v. Peoria & P. U. R. Co., 321 U. S. 29; Lavender v. Kurn, supra. Once there is a reasonable basis in the record for concluding that there was negligence which caused the injury, it is irrelevant that fair-minded men might reach a different conclusion. For then it would be an invasion of the jury's function for an appellate court to draw contrary inferences or to conclude that a different conclusion would be more reasonable.''

Defendant argues that plaintiff's contention that the accident was caused by the condition of the floor was an afterthought because in plaintiff's first pleading, later discarded, it was alleged the truck was negligently pushed into plaintiff causing his injury, and at his deposition taken before trial plaintiff testified that Streiff caused his injury by pushing the truck against him. True, such statements are contrary to plaintiff's evidence given later at the trial. But his testimony at the trial was not so self-contradictory that it was robbed of all probative force. The evidence submitted on behalf of plaintiff made a prima facie case.

We have considered a similar situation and some of the same authorities relied on here in Reeves v. Guy A. Thompson, Trustee, etc., just handed down, 357 Mo. Sup. 847, 211 S. W. (2d) 23. We pointed out in that case there was no ''conflict of evidence of plaintiff, but a conflict between his evidence and prior extra judicial statements.'' We held applicable in such a situation the general rule that where a plaintiff at one hearing testifies a given way, and at a later hearing testifies to the opposite, it is for the jury to determine what credence it will give to the evidence given before them, as impeached by what such a party said at the previous hearing. There, as here, the contradictory statements went only to the credibility of the plaintiff, which was a matter for the jury.

The defendant complains it did not have a fair trial because of the comments of the trial judge. Plaintiff was being cross examined as to the change in his position at the trial from the truck being pushed by Streiff to its being stuck in a rut in the floor and thus causing the accident. His statements in his deposition were being used in an attempt to impeach him. Apparently plaintiff became confused by the questions; the defendant charges he was merely attempting to evade damaging answers. However his demeanor was such as to cause the trial judge to observe: ''It may be that the witness is somewhat confused as to whether you (defendant's

counsel) asked him from the deposition, or what he has testified to.'' The cross examination continued and again the judge remarked: ''I think the witness is trying to explain, I will overrule the objection.'' [424] Later the judge cautioned plaintiff: ''If you know, you can answer. If you don't know, you can say you don't know.''

Later defendant's counsel questioned plaintiff: ''Q. And on page 11 here in your deposition you said: 'He shoved one end as the wheels broke.' As the wheels broke you meant by that that the two things happened at the same time, didn't you? A. Yes, either one could happen.

''Q. I say you mean the two things happened at the same time? A. Two things could happen at the same time. He might have shoved or I might pull.

''Q. Did they, that is what I want to know. I want to know what did happen, that is what the jury wants to know.''

After objection on the ground of repetition, the judge then spoke once again: ''Of course, the witness apparently doesn't understand. I don't know whether it is proper for me to say to the witness, if you don't know, say you don't, and let us know just what your position is in the matter. The witness has testified of course, that he didn't know whether Streiff was pushing or not. Now if that is true, of course he can't answer yes or no. I will permit him to answer the question and let's get it cleared up if we can.''

The case of Wair v. American Car and Foundry Co. (Mo. App.), 285 S. W. 155 relied on by defendant as authority that the judge's comments so influenced the jury as to prejudice it is not at all apposite on the facts. In that case the judge's comments were prejudicial. In the instant case the judge determined the witness was confused by the cross examination as to what he had previously said in his deposition, and what he had just testified to at the trial. Experience shows that many witnesses do become confused by such form of cross examination because they are not clear about which previous testimony, deposition or trial, the cross examiner is referring to. A trial judge has not only the discretion but it is his duty in conducting a fair and orderly trial, to assist in a proper way a witness who has become confused. There is nothing in the judge's conduct in this case in performing such duty that can be reasonably inferred to have prejudiced the jury either in favor of plaintiff or against defendant.

Plaintiff's chief instruction covering the whole case did not require the jury specifically to find that defendant had actual or constructive notice of the unsafe condition of the passageway floor. It is better practice to require such a finding but the failure to do so here is not fatal because the required findings of the instruction import knowledge of the unsafe condition of the floor on the part of defendant. The instruction required a finding that the flooring was unsafe because ''old, worn, rough, depressed and uneven'' and for

that reason defendant failed to exercise ordinary care in furnishing plaintiff a reasonably safe place to work, and because of such failure to exercise ordinary care was guilty of negligence.

In support of this instruction plaintiff relies on Messing v. Judge & Dolph Drug Co., 322 Mo. 901, 18 S. W. (2d) 408 in which we approved a somewhat similar instruction in the face of the same criticism made here. There we said: ''The instruction, however, requires the jury to find, as a necessary prerequisite to a verdict in favor of plaintiff, that, '*in thus furnishing and providing said place of work . . . the defendant failed to use ordinary care and was guilty of negligence.*' It has been repeatedly and consistently ruled by this court that a finding of *negligence* imports knowledge (on the part of the party found to have been negligent) of the unsafe condition of the appliance, or of the place of work. An allegation, or a finding, that a defendant *negligently* caused or permitted an unsafe described condition is equivalent to an allegation, or a finding, that the defendant *knew* the condition to exist. (Citing cases.) The reason for the foregoing uniform holding is readily apparent, for it is obvious that the jury could not well have found that the defendant was negligent in furnishing the plaintiff with an unsafe place in which to work without believing (and inferentially finding) that defendant knew, or by the exercise of ordinary care could have known, of the unsafe condition of the place of work.'' (Citing cases.) That [425] doctrine has since been followed in: Simmons v. Kansas City Jockey Club, 334 Mo. 99, 66 S. W. (2d) 119; Kamer v. M.-K.-T. R. R. Co., 326 Mo. 792, 32 S. W. (2d) 1075; Perry v. M.-K.-T. R. R. Co., 340 Mo. 1052, 104 S. W. (2d) 332.

Defendant urges that we should reexamine that doctrine. Perhaps, if the circumstances of this case were otherwise, it would be well to do so, and, in the future, to limit its application only to those instances in which we are satisfied the jury, in making all the findings required by an instruction in order to reach the requested verdict, could not do so unless it also found defendant had sufficient knowledge of the unsafe condition complained of.

However, in the instant case we are satisfied from the requirements contained in plaintiff's instruction that the jury had to find, inferentially at least, that defendant had sufficient knowledge of the unsafe condition. The instruction required, as we have pointed out, the jury to find that the place of work was unsafe because the flooring was *old* and rough, and that defendant furnished the place of work in such a condition, and that by doing so defendant was negligent. Thus the jury had to find defendant knew of such condition for some time before it could return a verdict for plaintiff under the instruction. We find no error in this instruction under the particular circumstances of this case. Our decision in McGrew v. Thompson, Trustee, 353 Mo. 856, 184 S. W. (2d) 994 does not discuss the doctrine an-

nounced in the Messing case or the decisions supporting it. That was not a case where a master was charged with furnishing his servant an unsafe place to work.

We do not find plaintiff's main instruction conflicts with defendant's instruction merely because the latter specifically requires a finding by the jury of knowledge of the unsafe condition on the part of defendant. The fact that plaintiff's instruction was not specific in requiring such a finding did not for that reason make it conflict with defendant's instruction which had a specific requirement of such a finding. The two instructions are compatible and are to be considered together. Jenkins v. Missouri State Life Ins. Co., 334 Mo. 941, 69 S. W. (2d) 666; State ex rel. v. Shain, 344 Mo. 57, 124 S. W. (2d) 1194. Defendant's objections about rulings on other instructions are also not well taken.

Defendant makes other complaints about being improperly restricted in the cross examination of a witness; about the refusal of the court to declare a mistrial after a witness volunteered an improper answer which the court instructed the jury to disregard; and about improper argument by plaintiff's counsel. All these matters are within the sound discretion of the trial judge. After examining the record we hold the court did not abuse its discretion in its rulings in any of the matters complained of. See Orr v. Shell Oil Co., 352 Mo. 288, 177 S. W. (2d) 608; Menke v. Rovin, 352 Mo. 826, 180 S. W. (2d) 24; Scharff v. Standard Tank Car Co., 214 Mo. App. 658, 264 S. W. 56; Burow v. Red Line Service, 343 Mo. 605, 122 S. W. (2d) 919.

The final issue is whether the verdict is excessive. At the time he was injured plaintiff was fifty years old and earning $38 per week. As a result of his fall two bones in his right wrist and one bone in his left wrist were broken. The fracture of the left wrist has not united, but the fractures of the right wrist have united leaving some deformity and angulation. There was evidence that the right hand, wrist and forearm suffered disability of from 25% to 75%, as to the left up to 40%. Also there will be permanent limitation in both wrists, and that plaintiff cannot completely close his right hand. Even in view of the present economic conditions and the diminished purchasing power of the dollar we believe the verdict is excessive by at least $6,000.

If plaintiff will within ten days from the date of the filing of this opinion, file here a remittitur of $6,000, the judgment will stand affirmed as of the date of its rendition for $12,000. Otherwise, the judgment will be reversed and the cause remanded.

It is so ordered. All concur.